MEMORANDUM *
1. Rader failed to make out a prima facie case of sexual harassment. Rader presents no evidence in support of a quid pro quo theory that she or anyone else was ever asked to provide sexual favors. Rad-er’s sole allegation is that, as her supervisor escorted her to receive her termination letter, he said, “You should have f * * * ed me.” The offensive remark cannot establish quid pro quo because Rader provides no evidence that her supervisor sought sexual consideration from her; without evidence that she had the opportunity to reject his advances, there can be no quid pro quo inference. See Holly D. v. Cal. Inst. of Tech., 389 F.3d 1158, 1173 (9th Cir.2003). Rader’s inference is based upon speculation and cannot create a triable issue of material fact. See Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir.2003). We find that this isolated sexual comment, spoken after the decision to terminate Rader had already been made, was a “mere offensive utterance.” See Vasquez v. Cnty. of L.A., 349 F.3d 634, 642 (9th Cir.2003); Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1110-11 (9th Cir.2000).
Moreover, Rader admits the alleged flirting and friendly contact between her supervisor and another female employee was neither sexual nor sufficiently severe or pervasive to constitute a hostile work environment. See Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir.2007).
2. While Rader made out a prima facie case of religious discrimination, Defendant demonstrated a valid reason for terminating her, and she fails to show this reason was pretextual. We also note that her request to observe Yom Kippur was granted according to normal procedure. Rader also alleges that she heard her direct supervisor use the word “kike” with respect to others on four or five occasions and heard the supervisor’s assistant use the word once with respect to her. While undoubtedly offensive to Rader, “ ‘stray’ remarks are insufficient to establish discrimination,” Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1438 (9th Cir.1990), especially when the remarks are “not tied directly to [the employee’s] layoff,”[1] Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir.1996). Lastly, Rader presents no admissible evidence supporting her allegation that another Jewish employee was fired. Instead, she admits this allegation is based only on office gossip relayed to her by other employees. See Fed.R.Civ.P. 56(c)(4).
Based on the foregoing record, we conclude that, at best, Rader’s evidence raised *717 only a “weak” issue of fact and the record contains other, “abundant and uncontro-verted independent evidence that no discrimination had occurred,” thus, judgment as a matter of law for Defendant was appropriate. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
3. Even crediting Rader’s reported disabilities and the fact that she was otherwise qualified to do her job, Rader does not allege facts giving rise to an inference of disability discrimination. See Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir.2007).
4. Although Rader was fifty-eight and she performed her job satisfactorily, she has not “show[n] through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination.” Nidds, 113 F.3d at 917.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Rader also describes an incident where a Department of Homeland Security employee dressed mockingly as an Orthodox rabbi. Again, while offensive, Rader presents no evidence linking this incident to her termination. DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n, 879 F.2d 459, 467-68 (9th Cir.1989) (affirming summary judgment for employer where plaintiff failed to demonstrate nexus between discriminatory remark and plaintiff's termination).